232

## Smith v. City of Allentown

*Paul A. McGinley*, for plaintiff.

*George H. Sacks*, for defendant.

KOCH, J., November 4, 1957.—Plaintiff, a resident and property owner of the City of Allentown, filed a complaint in equity against defendant municipality, a city of the third class. The proceeding seeks to enjoin the City of Allentown from using other than master and journeymen plumbers under the terms of Ordinance No. 7945, Bill No. 273-1955, known as the "Allentown Bureau of Water Service Pipe Ordinance". The title of this ordinance is as follows:

"Regulating the maintenance of connecting or conducting service pipes for the use of water from the water main to the stop cock and providing rules and regulations to govern the same for the Bureau of Water."

The complaint avers that this ordinance is in direct violation of the Act of March 31, 1937, P. L. 168, sec. 1, as amended by the Act of June 15, 1939, P. L. 371, sec. 1, 53 PS §4591, which provides as follows:

"From and after the passage of this act, it shall not be lawful for any persons to carry on or work at the business of plumbing or house or building drainage in cities of the second, second class A, and third class of this Commonwealth until a certificate or license to engage in or work at said business shall have been granted said persons by the director of the department of public safety, or department or board or bureau of health, of such cities; nor until they have registered as such in the office of the department or board or bureau of health of said cities, as hereinafter provided."

Defendant has filed preliminary objections in the nature of a demurrer and for a more specific complaint.

It is maintained by defendant that the Act of 1937, as amended, supra, does not pertain to nor restrict the City of Allentown in the performance of powers duly authorized and conferred upon it by the state legislature.

A careful reading of this act, commonly known as the Plumbing Code, persuades us that the legislation does not apply to a municipality such as the City of Allentown. It is to be noted that this legislation declares it to be unlawful for *"any persons"* to carry on or work at the *"business"* of plumbing. Article VIII, sec. 101, of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §601, defines the word "person" as including a corporation, partnership and association. That this definition does not include municipal corporations is clear for the reason that this term is separately defined in that act as "a city, borough or incorporated town."

Section 2 of the ordinance here under attack does nothing more than authorize the Bureau of Water, in the Department of Parks and Public Property, to take over the maintenance of all service pipes* for the use of water. The term "maintenance" in section 5 embraces all service pipes for the use of water between the city water main and the stopcock on the sidewalk presently laid under the cartway of the streets of the City of Allentown. This undertaking by the Bureau of Water cannot be interpreted as the "business of plumbing" under the Plumbing Code.

Unfortunately, the Plumbing Code does not spell out the meaning of these terms. However, the words of this act closely follow the Act of July 2, 1935, P. L. 561, 53 PS §15321, known as the Plumbing Code for Cities of the First Class, which requires persons engaged in the business of plumbing to secure a license. That act defines plumbing as embracing "drainage, water piping, or the construction, alteration, and repairing any drainage, cesspools, trap, waste vent, or water piping, and fixtures attached thereto, directly or indirectly, connected to the city service water supply. . . ."

That the legislature did not intend to restrict a city from doing the acts complained of in this suit is further demonstrated by the provisions of The Third Class City Law of June 23, 1931, P. L. 932, art. XXXV, sec. 3501, as amended, 53 PS §38501, which confers upon the municipality the exclusive right to furnish water to the city. This act provides as follows:

"Each city shall have the exclusive right, at all times, to supply the city with water, and such persons,

---

* "Service pipes" are defined (section 5) as follows: "A pipe leading from the water main to the stopcock for the use of water to a lot, dwelling or property receiving water service ranging in size from one (1") inch to and including twelve (12") inches in diameter."

partnerships, and corporations therein as may desire the same, at such prices, as may be agreed upon; and for that purpose to have, at all times, the unrestricted right, by ordinance, subject to the provisions of existing laws, to make, erect, and maintain all proper works, machinery. buildings, cisterns, reservoirs, pipes, conduits, for the raising, reception, conveyances, and distribution of water. . . ."

It would be unrealistic in view of these broad powers to conclude that the city did not have the right to maintain, through its own agents, the service pipes for the use of water between its mains and the stopcocks. Plaintiff does not contend that the mains resting beneath the street must be maintained by registered plumbers and, accordingly, we cannot comprehend in what manner the exercise of jurisdiction by the Bureau of Water over laterals can adversely affect the public health. Moreover, the repair and maintenance of this portion of the system involves another important function, the maintenance of its streets. The danger of street cave-ins resulting from improper work is so obvious that it requires no discussion. Defendant has a clear legal obligation to maintain its streets in a safe condition and the proper maintenance of its underground mains and laterals is a fundamental element in meeting this duty.

It is true that the powers of a municipality must be strictly construed but this rule is subject to certain limitations. It has been said that " 'where the particular power is clearly conferred, or is fairly included in or inferable from other powers expressly conferred, and is consistent with the purposes of the municipality and the powers expressly conferred, the exercise of the power should be resolved in favor of the city so as to enable it to perform its proper functions of government' ": McQuillin, Municipal Corporation, vol. 2, §10.21.

In light of the right vested in defendant municipality to supply the city with water, we must also conclude that it is not "carrying on, or engaging in" the business of plumbing which the Plumbing Code seeks to regulate.

Since we hold that defendant's demurrer must be sustained, it becomes unnecessary for a detailed discussion regarding the motion for a more specific complaint. We note, however, that the complaint fails to specify the manner in which defendant failed to comply with the Plumbing Code and Plumbing Ordinance. The complaint does nothing more than allege that defendant is using other than master or journeymen plumbers for the services rendered by the city. Moreover, the complaint charges that plaintiff and other residents of the City of Allentown may suffer irreparable harm without detailing the manner in which such injury may result.

*Order*

And now, November 4, 1957, defendant's demurrer is sustained.